UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN J. CRAMER,                              15-CV-769-RJA-MJR
                                               REPORT AND RECOMMENDATION
                    Plaintiff,

        -v-

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                    Defendant.
_____

        This case has been referred to the undersigned by the Hon. Richard J. Arcara

pursuant to 28 U.S.C. §636(b)(1)(B) for the preparation of a report and recommendation

on dispositive motions.  (Dkt. No. 8).

        Plaintiff Steven J. Cramer brings this action pursuant to 42 U.S.C. §405(g)

seeking judicial review of the final decision of the Commissioner of Social Security

denying him disability insurance benefits under the Social Security Act (the "Act").  Both

parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure.  For the following reasons, it is recommended that Cramer's

motion (Dkt. No. 7) be denied and the Commissioner's motion (Dkt. No. 9) be granted.

## **BACKGROUND**

I.    *Procedural History*

        On September 25, 2012, Cramer filed an application for disability insurance

benefits alleging disability due to a lower back injury.  (*See* Tr. 61, 120-21, 137).[2]  He

---

[1]       Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted
for the previously named defendant Carolyn W. Colvin.  The Clerk of Court is directed to amend the
caption accordingly.
[2]       References to "Tr." are to the administrative record in this case.

injured his back in 1996 while working as an inspector at Jensen Fittings. (Tr. 40, 153). He continued to work at Jensen Fittings until 2006. (Tr. 165). Between 2006 and 2012, he worked as a delivery driver and in a warehouse. (*Id.*). He has not worked since March 20, 2012, his alleged onset date. (Tr. 61, 137). Cramer's disability application was denied on November 28, 2012 (Tr. 61-70, 72-75), after which he requested a hearing before an Administrative Law Judge (Tr. 88-89). On February 27, 2014, Cramer, represented by counsel, appeared before Administrative Law Judge Robert T. Harvey (the "ALJ") for a hearing. (Tr. 30-60). On May 6, 2014, the ALJ issued his decision denying Cramer's claim. (Tr. 15-29). Cramer requested review by the Appeals Council (Tr. 13-14), but on July 1, 2015, the Appeals Council denied Cramer's request, making the ALJ's decision the final decision of the Commissioner (Tr. 9-11). This action followed.

II.    *Summary of the Evidence*

A.    *Medical Evidence*

The following is a summary of the medical evidence in the record as it relates to Cramer's lower back impairment since his alleged March 20, 2012 onset date.

1.    *Dr. Smith-Blackwell*

On March 29, 2012, Cramer visited Dr. Olivia Smith-Blackwell regarding his lower back pain. Cramer stated that he reinjured his back two weeks before the appointment by tripping on a set of stairs and falling against the wall. He reported aching, burning, jabbing, sharp pain, and stiffness, and that sitting or standing for more than forty-five minutes aggravated the pain. Dr. Smith-Blackwell diagnosed Cramer with lumbago, advised him to remain off of work until he was reevaluated, prescribed

Flexeril and ibuprofen, and suggested that he pursue physical therapy. (Tr. 196-98). Cramer visited Degraff Memorial Hospital for physical therapy fourteen times between April and June 2012. (Tr. 190).

At an appointment on April 12, 2012, Cramer informed Dr. Smith-Blackwell that he would like to return to work, but that he still could not lift objects. He never took the Flexeril or ibuprofen that she prescribed for him at his last appointment. Dr. Smith-Blackwell diagnosed Cramer with lumbago and muscle spasm, referred him to an orthopedist, and instructed him to continue physical therapy. She said that he could return to work in five days, but that he should not lift more than ten pounds or stand for more than forty-five minutes at a time. (Tr. 223-25).

On May 23, 2012, Cramer visited family nurse practitioner Elizabeth Zak at Dr. Smith-Blackwell's office regarding his lower back pain. On physical examination, Cramer could get on the exam table, sit, lie down and get up with minimal assistance of his arms, and "flex both legs while lying to just about 90% without pain." He had full strength and range of motion in his lower extremities, and straight leg raising test was negative. Zak assessed lumbago and elevated blood pressure. (Tr. 228-30).

### 2. *Dr. Vigna*

Cramer treated with Dr. Franco Vigna, an orthopedist, four times between May 18 and August 1, 2012. Dr. Vigna's impression at the initial appointment was "[s]tatus post work-related injury of the lumbar spine, lumbar disc desiccation, lumbar spinal stenosis, [ ] displaced lumbar disc without myelopathy[,] [and] degenerative lumbar disc." He assessed a "marked 75% disability" and instructed Cramer not to lift more than ten pounds and to avoid repetitive bending, lifting, and twisting. (Tr. 241-43). On

June 1, 2012, Cramer returned to Dr. Vigna regarding his lower back pain, which he described as being "somewhat worse" than at the initial appointment. Dr. Vigna advised Cramer that he may engage in light exercise, including walking on a treadmill and using an elliptical machine, but that he should not lift more than ten pounds. He assessed a "75% moderate disability" and referred Cramer to Dr. David Pacana for chiropractic care. (Tr. 239-40). Cramer again reported lower back pain at a June 29, 2012 appointment with Dr. Vigna. However, Cramer went on to state that Dr. Pacana had "significantly improved his symptoms," and that he has "not had this much relief in 16 years." Dr. Vigna again assessed a "75% moderate disability," and he and Cramer discussed transitioning to a job that does not require repetitive heavy lifting. (Tr. 237-38). Cramer had his fourth and final appointment with Dr. Vigna on August 1, 2012. Cramer reported "feel[ing] good in terms of his low back pain," but noted that his pain had been "drastically worse" the last two weeks. Dr. Vigna again assessed a "75% moderate disability." (Tr. 235-36).

### 3. *Dr. Pacana*

Cramer treated with Dr. Pacana thirty-one times between June 4 and October 19, 2012, and twenty-two times between March 6 and December 27, 2013. (Tr. 245-76, 335-53, 358-62). The treatment included chiropractic manipulative therapy, soft tissue massage, and ultrasound to the lumbar region. (Tr. 246-76, 335-65, 358-62). Between June 4 and June 18, 2012, Dr. Pacana diagnosed "disc displacement, prolapse, protrusion" (Tr. 246-49), and he added additional diagnoses of sciatica, "strain/sprain, lumbar," and "lumbar segmental dysfunction" between June 20 and December 27, 2013 (Tr. 250-76, 335-53, 358-62).

On July 30, 2012, Dr. Pacana completed an "Attending Physician Statement" for Metropolitan Life Insurance Company in which he opined that Cramer can sit intermittently for two hours, stand intermittently for one hour, walk intermittently for one hour, reach above his shoulders, operate a motor vehicle, engage in fine finger and eye/hand movements, push and pull bilaterally, lift/carry up to twenty pounds occasionally, but not climb, twist, bend, or stoop.  Dr. Pacana further opined that Cramer can work a total of three to four hours a day and that he could return to work part-time "if able to lift less weight."  He suggested that Cramer seek out job modification and vocational rehabilitation programs.  (Tr. 287-90).

On November 1, 2013, Dr. Pacana completed a "Physical Capacity Evaluation" for Metropolitan Life.  The evaluation reflects Dr. Pacana's opinion that Cramer can occasionally lift twenty-one to fifty pounds from the floor to his waist, frequently lift less than ten pounds from the floor to his waist, occasionally lift ten to twenty pounds from his waist to his shoulders, occasionally lift ten to twenty pounds above his shoulders, occasionally reach above his shoulders and to the front and side, frequently carry ten to twenty pounds, occasionally carry twenty-one to fifty pounds, occasionally push twenty-one to fifty pounds, and occasionally pull ten to twenty pounds.  He can occasionally bend, crouch, kneel, climb stairs, and balance, but he cannot climb ladders or crawl.  He can sit and stand for fifteen to twenty minutes every hour and three to five hours a day, walk for ten to fifteen minutes every hour and for three to five hours a day, drive an automobile for twenty minutes every hour and for three to five hours a day, but not operate heavy equipment.  He needs the ability to change positions from standing to sitting and sitting to standing.  (Tr. 354-57).

4. *Dr. Mills*

On August 24, 2012, Dr. Edward Mills, an orthopedic surgeon, examined Cramer for Worker's Compensation purposes.  After reviewing the available medical records and performing a physical examination, Dr. Mills diagnosed Cramer with "lumbar spine sprain – resolved" and opined that he is not disabled.  (Tr. 307-10).

5. *Dr. Miller*

On November 21, 2012, Cramer visited Dr. Donna Miller for an internal medicine consultative examination.  Cramer informed Dr. Miller that he has had chronic lower back pain since 1996, and that the pain became severe in March 2012.  He stated that cold, damp weather and prolonged standing increases the pain, while chiropractic care helps relieve it.  On physical examination, Cramer was in no acute distress, walked with a normal gait, maintained a normal stance, could walk on his heels and toes without difficulty, and could squat fully.  He did not use assistive devices, did not need help changing for the exam or getting on and off the exam table, and could rise from his chair without difficulty.  He retained full flexion, extension, and rotary movement of his cervical spine, while his lumbar spine revealed flexion to seventy degrees, extension to fifteen degrees, lateral flexion to thirty degrees bilaterally, and rotation to thirty degrees bilaterally.  Straight leg raising test was negative bilaterally.  He retained full range of motion of his shoulders, elbows, forearms, wrists, hips, knees, and ankles, and full dexterity and grip strength of his hands.  Dr. Miller assessed chronic lower back pain and rendered the following medical source statement:  "[t]he claimant has mild limitation for heavy lifting, bending, and carrying."  (Tr. 318-21).

6. *Dr. Dees*

On February 4, 2013, state agency medical consultant Dr. Tom Dees reviewed the available evidence before opining that Cramer can perform medium work. (Tr. 327-28).[3]

7. *Medical Imaging*

An MRI taken on August 27, 2008 reveals mild degenerative changes of Cramer's lumbar spine, small central and slightly to the right disc herniation at L4-5, bony hypertrophy and disc bulge asymmetric to the left L5-S1, shallow far left lateral disc herniation at L2-3 and L3-4, and "what appears to be an anterior disc herniation and/or early osteophyte development at L4-5 in a right paracentral position which causes some compensatory deformity to the IVC." (Tr. 219-20). A lumbosacral spine x-ray taken on March 30, 2012 reveals mild levoscoliosis and mild disc space narrowing of L4-5 and L5-S1. (Tr. 189). An MRI taken on April 18, 2012 reveals degenerative changes resulting in mild central spinal stenosis at L3-4 and L4-5, foraminal narrowing (most severe at L5-S1, left greater than right), a small right paracentral disc protrusion at L4-5, and a small central disc protrusion at L5-S1. (Tr. 244).

B. *Administrative Hearing Testimony*

Born in 1961, Cramer was fifty-three-years old on the day of the hearing. (Tr. 34). He is married and lives with his wife. (*Id.*). His daily activities include washing dishes, cooking, taking out the trash, shopping, visiting friends, driving, and writing songs. (Tr. 42-43). He is able to cut his lawn with a propelled lawn mower, although he sometimes has to take a twenty minute break while doing so. (Tr. 51). He has difficulty

---

[3]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [then] he or she can also do sedentary and light work." 20 C.F.R. §404.1567(c).

bathing when his back "goes out."  (Tr. 43-44).  His back last went out in December 2013, and before that, in March 2012.  (Tr. 52-53).  He spends approximately one hour at the gym three times a week, where he uses the treadmill, stretches, does breathing exercises, and exercises his core and supporting muscles with weight assist machines. (Tr. 45-46).  He visits a second gym to swim in the pool.  (Tr. 48).

Cramer testified that his lower back pain travels into his groin, and that he has experienced pain "off and on since 1996."  (Tr. 36).  Cold, wet, and rainy weather increases the pain.  (Tr. 46).  On a scale of one to ten, his back pain is a four, but it goes up to eight during icy and rainy weather, and it is "off the charts" when his back is "totally inflamed."  (*Id.*).  Rather than take medication to treat his pain, he does stretching exercises.  (Tr. 46-47).

Cramer testified that he can perform activities for an hour before needing to take at least a twenty minute break.  (Tr. 51-52).  He can sit for forty-five minutes to an hour, and he reported "feeling pretty good" while sitting at the hearing.  (Tr. 45, 50).  He has trouble walking and standing "[o]nce in a while," although he can sometimes walk on the treadmill for forty-five minutes to an hour without getting fatigued.  (Tr. 44-45).  He can lift ten pounds without a problem and a twenty pound bag of potatoes if he is careful. (Tr. 44).  He cannot push, pull, squat, bend, or climb without experiencing symptoms. (Tr. 55).

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions, even if supported by substantial

evidence, must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). These steps proceed as follows. First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant

is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is otherwise "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on

that assessment, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC assessment, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Cramer has not engaged in substantial gainful activity since March 20, 2012, his alleged onset date. (Tr. 20). At step two, the ALJ concluded that Cramer has the following severe impairment: "discogenic lumbar spine and lumbar radiculopathy." (*Id.*). At step three, the ALJ found that Cramer does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before proceeding to step four, the ALJ assessed Cramer's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in [20 C.F.R. §404.1567(b)] except he can stand and walk six hours in an eight-hour workday and he can sit two hours in an eight-hour workday. He can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. He can occasionally push or pull up to 20 pounds with his upper extremities. He has occasional limitations in his ability to bend, climb stairs, or ramps, stoop, squat, kneel and crawl. He cannot work in an area where he would be exposed to excessive cold or dampness.

(Tr. 21). Proceeding to step four, the ALJ found Cramer capable of performing his past relevant work as a metal fabricator inspector. (Tr. 25). Accordingly, without having to reach step five, the ALJ concluded that Cramer has not been under a disability within the meaning of the Act since his alleged March 20, 2012 onset date through the date of the ALJ's decision. (Tr. 26).

IV.   *Cramer's Challenges*

Cramer challenges the Commissioner's decision on three grounds: (1) the ALJ violated the "treating physician rule" by allegedly ignoring Dr. Vigna's opinion; (2) the ALJ did not properly evaluate Dr. Pacana's opinions; and (3) the ALJ failed to properly evaluate his credibility. The Court will address each argument in turn.

A.   *Dr. Vigna's Opinion*

Cramer first argues that the ALJ violated the treating physician rule by allegedly ignoring Dr. Vigna's opinion that he should not lift more than ten pounds or engage in repetitive bending, lifting, or twisting. Dr. Vigna's opinion conflicts with the ALJ's conclusion that Cramer retains the RFC to occasionally lift and carry twenty pounds. According to Cramer, had the ALJ applied the treating physician rule to Dr. Vigna's opinion, the ALJ might have arrived at a different RFC determination and ultimately concluded that he cannot perform his past relevant work.

The treating physician rule requires an ALJ to give controlling weight to a treating source's opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §404.1527(c)(2).  If the ALJ elects not to give a treating source's opinion controlling weight, he must consider certain factors to determine the weight to give the opinion, *id.*, and "comprehensively set forth [his] reasons for the weight assigned to [the] opinion," *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (first alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

The treating physician rule applies to opinions rendered by "treating sources," *i.e.*, those who have (or have had) an ongoing treatment relationship with the claimant. 20 C.F.R. §404.1527(a)(2).[4]  Here, Dr. Vigna rendered his opinion during his initial visit with Cramer, before the two had an ongoing treatment relationship.  Thus, Dr. Vigna was not a treating source at the time he rendered his opinion, and the ALJ's purported failure to apply the treating physician rule to Dr. Vigna's opinion is not a basis for remand.  *See Kane v. Astrue*, No. 1:10CV1874, 2011 WL 3353866, at *7 (N.D. Ohio Aug. 23, 2011) ("For purposes of the treating physician rule, the question is whether the physician had the ongoing relationship with the claimant to qualify as a treating

---

[4]    "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).  We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.  In such a case, we will consider the acceptable medical source to be a nontreating source."  20 C.F.R. §404.1527(a)(2).

physician at the time he rendered his opinion.  Clearly, Dr. Ahn did not have an ongoing relationship with Plaintiff at the time of her first visit.") (internal quotation marks, citation, and alterations omitted); *Hickman v. Colvin*, No. 1:13-cv-00089, 2014 WL 2765670, at *12 (M.D. Tenn. June 18, 2014) ("[O]pinions rendered during a physician's first visit with a claimant are not entitled to controlling weight."), *report and recommendation adopted*, 2014 WL 3404967 (M.D. Tenn. July 10, 2014).

Moreover, contrary to Cramer's argument, the ALJ's failure to expressly discuss Dr. Vigna's opinion does not mean that he ignored it.  In making his RFC determination, the ALJ discussed Cramer's treatment with Dr. Vigna, including the visit at which Dr. Vigna opined that Cramer should not lift more than ten pounds or engage in repetitive bending, lifting, or twisting.  (Tr. 22).  The ALJ's discussion of Dr. Vigna's treatment notes leaves the Court satisfied that the ALJ gave due consideration to Dr. Vigna's opinion, but ultimately found it to be less persuasive than other evidence in the record. *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

### B.  *Dr. Pacana's Opinions*

Dr. Pacana rendered two opinions that address, among other things, Cramer's exertional and postural limitations.  (Tr. 287-90, 354-57).  The ALJ gave "little weight" to Dr. Pacana's first opinion because it conflicts with Dr. Miller's assessment that Cramer has only mild limitations for heavy lifting, bending, and carrying.  (Tr. 23).  The ALJ gave "some weight" to the residual functional capacity and exertional limitations in Dr. Pacana's second opinion, but little weight to its positional limitations, again finding the

limitations to be in conflict with Dr. Miller's opinion.  (Tr. 24).  Cramer argues that the ALJ erred by purportedly relying on nothing more than Dr. Miller's opinion to discount Dr. Pacana's opinions, and that the ALJ should have instead assessed Dr. Pacana's opinions using the factors set forth in 20 C.F.R. §404.1527(c).[5]

Under the regulations, Dr. Miller, a physician, is an "acceptable medical source," but Dr. Pacana, a chiropractor, is not.  *See id.* §404.1502(a).  Because acceptable medical sources are considered to be "the most qualified health care professionals," the ALJ acted within his discretion by choosing Dr. Miller's opinion over Dr. Pacana's opinions.  *See* Social Security Ruling ("SSR") 06-3p ("The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because  .  .  .  acceptable medical sources are the most qualified healthcare professionals.") (internal quotation marks and citation omitted).

Contrary to Cramer's argument, the ALJ considered the factors in 20 C.F.R. §404.1527(c) in assessing Dr. Pacana's opinions.  The ALJ noted, for instance, Dr. Pacana's specialty as a chiropractor, the length of Cramer's treatment with Dr. Pacana (since June 4, 2012), the frequency of examination (twice a week between June and October 2012 and two to three times a month between March and October 2013), the nature and extent of the treatment relationship (chiropractic care, including manipulative therapy, soft tissue massage, and ultrasound to the lumbar region), and that Dr. Pacana helped improve Cramer's symptoms.  (Tr. 23, 24).  The ALJ did not completely discount

---

[5]      These factors are the frequency of examination, the length, nature, and extent of the treatment relationship, the amount of evidence supporting the opinion, the consistency of the opinion with the record as a whole, whether the treating source is a specialist, and any other factor that tends to support or contradict the opinion.  20 C.F.R. §404.1527(c).

Dr. Pacana's opinions — he gave "some weight" to the exertional limitations identified in the second opinion, for example, that Cramer can occasionally lift twenty-one to fifty pounds from the floor to his waist, frequently lift less than ten pounds from the floor to his waist, occasionally lift ten to twenty pounds from his waist to his shoulders, occasionally lift ten to twenty pounds above his shoulders, frequently carry ten to twenty pounds, and occasionally carry twenty-one to fifty pounds. These limitations are largely in accord with the ALJ's conclusion that Cramer can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. For these reasons, the Court finds that the ALJ properly assessed Dr. Pacana's opinions, and that the ALJ acted within his discretion in deciding to assign more weight to the opinion of Dr. Miller.

### C. *Credibility*

Cramer's final argument is that the ALJ erred in finding him less than fully credible. It is well settled that it is the function of the Commissioner, not the Court, to appraise the credibility of witnesses, including the claimant. *See Carroll*, 705 F.2d at 642. "The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged." *Fisk v. Colvin*, No. 14-CV-931S, 2017 WL 1159730, at *5 (W.D.N.Y. Mar. 29, 2017). The Commissioner's regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is so impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's

symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must consider the following factors to make a determination regarding the claimant's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See Fisk*, 2017 WL 1159730, at *6; 20 C.F.R. §404.1529(c)(3)(i)-(vii); SSR 16-3p.

Here, at the first step of the credibility analysis, the ALJ determined that Cramer's medically determinable impairment could reasonably be expected to cause his alleged symptoms. Proceeding to the second step, the ALJ found that Cramer's statements concerning the intensity, persistence, and limiting effects of his symptoms to be credible, but not to the extent alleged. (Tr. 25). The ALJ reached this conclusion after considering the applicable factors. The ALJ noted, for instance, that Cramer is able to engage in a variety of daily activities, including cooking, cleaning, washing dishes, taking out the trash, cutting the grass, shopping, carrying packages, driving, and working out at the gym. (Tr. 24-25); 20 C.F.R. §404.1529(c)(3)(i). Although Cramer contends that the ALJ mischaracterized his daily activities, each activity (with the possible exception of cleaning[6]) is supported by the record. (Tr. 42-45). The ALJ also noted that Cramer does not take medication to treat his pain. (Tr. 25); 20 C.F.R.

---

[6]    Cramer testified at the ALJ hearing that he does not clean (Tr. 42), but he informed Dr. Miller that he cleans "once or twice a week" (Tr. 318).

§404.1529(c)(3)(iv).  While the regulations require the ALJ to consider treatment other than medication, the ALJ met this requirement by noting that Cramer received chiropractic manipulative therapy, soft tissue massage, ultrasound to the lumbar region, and physical therapy to treat his pain.  (Tr. 22-23); 20 C.F.R. §404.1529(c)(3)(v).  The ALJ also appropriately considered the location, duration, frequency, and intensity of Cramer's lower back pain as well as what precipitated and aggravates his pain.  20 C.F.R. §404.1529(c)(3)(ii), (iii).  The ALJ discussed, for example, that Cramer injured his back at work in 1996, how his pain ebbed and flowed after his March 20, 2012 onset date, and how certain conditions and activities, such as unpleasant weather, bending, and twisting, aggravate his pain.  (Tr. 21-25).  The ALJ also cited Cramer's testimony that he can lift a twenty pound bag of potatoes, which is consistent with the ALJ's conclusion that Cramer can meet the lifting requirements of light work.  (Tr. 24).  The ALJ applied the correct legal standard in concluding that Cramer's allegations regarding his symptoms were not credible to the extent alleged, and the ALJ's credibility determination is supported by substantial evidence.

In sum, Cramer's objections to the ALJ's decision amount to nothing more than an alternative view of the evidence in the record.  "[W]hether there is substantial evidence supporting [Cramer's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (Summary Order).  Based on its review of the record, the Court is satisfied that the ALJ's disability determination is indeed supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, it is recommended that Cramer's motion for judgment on the pleadings (Dkt. No. 7) be denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 9) be granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Arcara.

**_Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER._** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal

authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

       **SO ORDERED.**

Dated:      May 25, 2017
             Buffalo, New York

                         /s/ Michael J. Roemer
                         MICHAEL J. ROEMER
                         United States Magistrate Judge